

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 03 CR 799 |
| v. ) | |
| ) | Honorable James F. Holderman |
| WILLIE H. JONES ) | |
| ) | |
| ) | |

MEMORANDUM OPINION
REGARDING THE SENTENCING OF WILLIE H. JONES

JAMES F. HOLDERMAN, District Judge:

The four-count indictment in this case charged the defendant Willie H. Jones with the distribution of a controlled substance on four separate occasions. Each separate count alleged a specific type and amount of the alleged controlled substance as follows:

Count One, April 17, 2002, "approximately .30 grams of mixtures containing cocaine";

Count Two, May 2, 2002, "approximately .65 grams of mixtures containing cocaine base, also known as crack cocaine";

Count Three, May 17, 2002, "approximately 1.19 grams of mixtures containing cocaine base, also known as crack cocaine";

Count Four, September 11, 2002, "in excess of five grams of mixtures containing cocaine base, also known as crack cocaine."

The case went to trial and the jury found the defendant guilty of each of the four counts. Additionally, the jury, in response to a special interrogatory on the verdict form, found "beyond a reasonable doubt that the total amount of cocaine base defendant distributed as charged in Count Four was [m]ore than 5 grams but less than 50 grams." (Dkt. No. 35).

Defendant's post-trial motions were denied and the case has proceeded toward sentencing. The government's initial sentencing position as to Count One, the April 17, 2002 transaction, was that the amount the court should consider in sentencing the defendant, was not the .3 grams of cocaine charged in the indictment of which the defendant was found guilty, but .56 grams of cocaine base also known as crack. The government espoused this position in its initial sentencing arguments because Government Exhibit 16, a more complete report of the analysis than had been initially prepared by the investigating officers, the DuPage County Sheriff's Office, of the drugs purchased from the defendant on April 17, 2002, established that .56 grams of crack, not the .3 grams of cocaine charged in the indictment in Count One that the jury had considered and in finding the defendant guilty, was purchased from the defendant.

As to Count Three, which related to the May 17, 2002 transaction, the government's initial sentencing position as to the amount of drugs that the court should consider in sentencing the defendant was not the 1.19 grams of crack charged in Count Three of which the jury found the defendant guilty, but 1.88 grams of crack. The government made this argument because Government Exhibit 14, had not shown any analysis of a second bag marked "3B," purchased from the defendant on May 17, 2002. A report prepared over a year later dated December 5, 2003 of the DuPage County Sheriff's Office analyzed the "3B" bag and found an additional .69 grams of crack, that had not been previously reported. Adding that later-reported crack to the earlier-reported crack for May 17, 2002, brought the total crack purchased from the defendant on May 17, 2002 to 1.88 grams, rather than the amount of 1.19 grams alleged in Count Three of the indictment.

As to Count Four, the September 11, 2002 transaction, the jury found the defendant guilty and also found beyond a reasonable doubt the defendant distributed "more than 5 grams but less than

2

50 grams" of cocaine base on the date. The government's evidence introduced at trial as Government Exhibit 16, showed that the package distributed by the defendant on September 11, 2002 contained 47.37 grams of crack, which is the amount for which the government contends the defendant is responsible on that date. Defendant's counsel has argued as to Count Four that because the jury found an amount of "more than 5 grams but less than 50 grams," the most crack cocaine for which the defendant could be held responsible on September 11, 2002, for purposes of sentencing as alleged in Count Four is 5.1 grams.

At the request of the parties, sentencing of the defendant Willie Jones was delayed pending the United States Supreme Court's determination in *United States v. Booker*. After *Booker* was decided by the Supreme Court, counsel for each side in this case provided supplemental materials regarding the ramifications of *Booker* in the Seventh Circuit. When the materials submitted by counsel, did not include any discussion of the April 14, 2005 Seventh Circuit decision in *United States v. Macedo*, 406 F.3d 778 (7th Cir. 2005), the court called that opinion to counsels' attention, because the facts of the *Macedo* case and this case appeared similar, in that the government was seeking an enhanced sentenced based upon a drug quantity and a type of drug not charged in the indictment considered to the jury.[1]

---

[1]The Seventh Circuit summarized the circumstances in the *Macedo* case as follows: Pursuant to special verdict forms, the jury here found Macedo guilty beyond a reasonable doubt of, among other charges, (1) "conspiracy to import 500 grams or more of mixtures containing a detectible amount of methamphetamine," (2) possession of "50 grams or more, but less than 500 grams of mixtures containing a detectible amount of methamphetamine," and (3) attempt to possess "50 grams or more, but less than 500 grams of mixtures containing a detectible amount of methamphetamine." Thus, in total the jury found that Macedo's offenses of conviction involved a total of 600 or more grams of mixtures containing methamphetamine. Under *Booker*, these findings proven to the jury beyond a reasonable doubt provide a legitimate basis upon which a judge may impose

The Seventh Circuit's opinion in *Macedo* must be read in the context of the procedural history, in which Macedo's trial attorney had objected appropriately to preserve the Sixth

> sentence.
>
> We turn now to the district court's application of the Sentencing Guidelines. In this case, we analyze the district court's use of the Guidelines not to assess the propriety of their application—for after *Booker* they serve no longer as a mandatory prescription but rather as an advisory reference, *Booker*, 125 S. Ct. at 756-57—but rather to ascertain those facts upon which the district court felt authorized, even obliged, to base its sentence of Macedo. The Guidelines recognize various qualities of methamphetamine—"methamphetamine," "methamphetamine (Actual)," and "Ice." *See generally* U.S.S.G. § 2D1.1. These distinctions are of appreciable significance under the Guidelines' regime, because the quality of methamphetamine with which a defendant is found to have been involved can help determine the base offense level assigned to the defendant for purposes of calculating his sentence. Indeed, the base offense level is a factor upon which Guidelines sentencing is predominantly based.
>
> As the findings catalogued above reveal, the jury found Macedo guilty of offenses involving 600 grams or more of plain old *"methamphetamine"*—not "methamphetamine (actual)" or "Ice." Had the district court relied solely on those jury findings, Macedo's base offense level under the Guidelines would have been 32. *See* U.S.S.G. §§ 2D1.1(a)(3) and 2D1.1(c)(4) (providing a base level of 32 for offenses involving "[a]t least 500 G but less than 1.5 KG of Methamphetamine"). The district court, however, went further. At sentencing it found by a preponderance of the evidence that the actual weight of the charged mixtures was 878.8 grams (based on uncontested results of government lab analysis) and that 91% of those mixtures, or 799.7 grams, constituted "methamphetamine (actual)." Based on these supplemental factual findings, the district court sentenced Macedo pursuant to Sections 2D1.1(a)(3) and 2D1.1(c)(4) of the Guidelines, which carries with them a base offense level of 36 for offenses involving "at least 500 G but less than 1.5 KG of *Methamphetamine (actual)*, or at least 500 G but less than 1.5 KG of 'Ice.'" (emphasis added). Thus, based on solely judge-found facts, the district court increased Macedo's base offense level by four levels (from 32 to 36). Such sentencing in reliance on supplemental facts not admitted by Macedo or proven to the jury beyond a reasonable doubt—namely, involvement with 799.7 grams of methamphetamine (actual) as opposed to involvement with merely 600 grams of methamphetamine—squarely offends our new understanding of the Sixth Amendment as divined by *Booker*.

*Macedo*, 406 F.3d at 788-790.

4

Amendment issue resolved by the Supreme Court in *Booker* and remedied by the Supreme Court's declaring the U.S. Sentencing Guidelines to be advisory and no longer mandatory. The Seventh Circuit in *Macedo,* did not hold, in remanding the case for re-sentencing, that judicial findings based on a preponderance of the evidence for sentencing purposes were impermissible. Therefore, this court must evaluate the sentencing evidence under that standard in determining the appropriate sentencing guideline range.

In its filing of April 28, 2005, the government stated:

> [T]he government is willing to concede in the particular circumstances of this case the defendant should be found responsible for only .3 grams of cocaine and 1.19 grams of cocaine base for Counts 1 and 3 respectively.

(Dkt. No. 74, p. 13).

The government's concession in the particular circumstances of this case came after the court "expressed concerns regarding the fundamental fairness of stating a specific drug type in the indictment, but imposing a sentence based on a higher weight and differing drug type," even though the greater weight and more harshly considered illegal drug in terms of severity under the sentencing guidelines is consistent with the government's evidence. *Id.* The court appreciates the government's concession on this point in this case. The government should always, in enforcing the federal criminal law, be guided by the concepts of fundamental fairness, and should not evaluate the fundamental fairness in a particular case only as a mere acknowledgment when a court raises concerns.

Based upon the court's evaluation of the evidence, the court finds that the evidence establishes that the defendant is responsible for the distribution of a total amount cocaine base that is less than 50 grams. The amount of crack cocaine, proven by a preponderance of the evidence, that

5

the defendant distributed, and is therefore accountable for in this case, is 49.21 grams which consists of: .65 grams as is specifically charged in Count Two; 1.19 grams as is specifically charged in Count Three; and 47.37 grams as charged in Count Four which is consistent with the jury's finding of "more than 5 grams but less than 50 grams" as to Count Four.

Consequently, defendant's Base Offense Level pursuant to the Drug Quantity Table at § 2D1.1 of the 2003 Guidelines Manual is a Level 30.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: June 20, 2005